PER CURIAM.
We have for consideration proposed amendments to Florida Rules of Judicial Administration 2.050, 2.052, and 2.085. The Rules of Judicial Administration Committee of the Florida Bar proposes the amendments out of cycle in response to a request by this Court. See In re Proposed Amendment to Florida Rule of Judicial Administration 2.052(a), 770 So.2d 152, 154-55 (Fla.2000). We have jurisdiction. See art. V, § 2(a), Fla. Const.
BACKGROUND
In In re Proposed Amendment to Florida Rule of Judicial Administration *234 2.052(a), the Court considered an emergency petition to amend Florida Rule of Judicial Administration 2.052(a), as proposed by attorney Frank A. Kreidler.[1] Rule 2.052(a), Calendar Conflicts, outlines the general case priority to be considered in resolving the calendar conflicts that arise when attorneys are scheduled to be in two or more courts at the same time. That rule currently provides that criminal cases take priority over civil eases, and jury trials take priority over nonjury trials. Because termination of parental rights (TPR) proceedings do not fit neatly into either subdivision (a)(1) (criminal cases prevail over civil) or (a)(2) (jury trials prevail over nonjury trials) of the current rule, attorney Kreidler sought to amend the rule to give TPR cases priority over other types of cases.
The Rules of Judicial Administration Committee (Rules Committee) opposed the amendment, taking the position that amending rule 2.052 was not the best way to address whether TPR cases should be granted priority status for the purpose of advancing those cases on a trial court’s docket in an effort to ensure their prompt resolution. The Rules Committee explained that rule 2.052, which is entitled “Calendar Conflicts,” was
designed to address attorney scheduling conflicts and is based on the 1995 Resolution of the Florida State-Federal Judicial Council Regarding Calendar Conflicts Between State and Federal Courts. Rule 2.052 was intended to ensure that the same guidelines for resolving scheduling conflicts were used in the state rule as are used in the Resolution adopted by the State-Federal Judicial Council, which is contained in the committee notes to the rule. The rule was not designed to set priorities for any specific categories of cases.
770 So.2d at 153.
The Court strongly agreed with the proponents of the proposed amendment that steps must be taken to ensure the expedited processing of TPR and other time-sensitive cases concerning children, but “believed this issue should be addressed on a broader front than just the conflict rule.” Id. The Court explained that
[r]ule 2.052, like the Resolution after which it is modeled, offers broad guidelines for addressing calendar conflicts and was not intended to outline specific types of cases that might warrant priority handling in the trial courts. Rule 2.052 does not address the relative importance of any particular type of case. The rule simply provides general guidelines to be considered in resolving calender conflicts.
770 So.2d at 154. Therefore, rather than adopting an amendment that would address the expedited processing of TPR cases only in the context of scheduling conflicts, the Court referred the matter to the Rules Committee for further consideration. Id. at 153-54.
The Court asked the Rules Committee to consider ways to ensure the expedited trial-level processing of proceedings relating to children and other time-sensitive cases. In this regard, the Court asked the Committee to consider whether a rule similar to Florida Rule of Appellate Procedure 9.146(g) (directing appellate courts to give priority to proceedings in TPR and juvenile dependency cases and cases involving families and children in need of services) is warranted for trial-level proceedings. The *235 Court also asked the Rules Committee to consider what other rule changes can be made in order to ensure the timely processing of time-sensitive cases. Id. at 154-55. Among the options the Court asked the Rules Committee to consider were
whether a broad-based rule establishing priorities for all time-sensitive trial-level proceedings should be adopted; whether time standards should be adopted to ensure compliance with statutory time lines; and whether rule 2.052(a) should be amended to give specific guidance as to the priority to be given specific categories of cases that might warrant expedited handling.
Id. at 155.
At the Court’s direction, the Rules Committee published its proposals before filing them with the Court. After considering the comments received, the committee voted to approve its original proposals, which are now before the Court for consideration.
COMMITTEE’S PROPOSALS
In attempting to identify any other types of priority cases perceived as not receiving appropriate attention by trial courts, the Rules Committee contacted all sections of The Florida Bar as well as relevant committees and interested groups. According to the committee, the responses received suggested that with the exception of cases involving juveniles, no other types of cases afforded priority or expedited treatment under Florida law were being inappropriately treated by trial judges.
After carefully considering the possible approaches that could be taken to ensure the expedited processing of priority cases, including time-sensitive cases involving children, the Rules Committee decided against proposing a “predetermined universal ranking” system. Rather, the committee agreed on a proposal that focuses on the three participants in the trial court system who have the ability to influence the way cases are assigned priorities and scheduled' — the trial judges, the attorneys, and the chief judges. In this regard, the Rules Committee proposes amendments to rules 2.050, Trial Court Administration, and 2.085, Time Standards for Trial and Appellate Courts, that provide trial-level procedures for priority cases. Proposed new rule 2.050(g) and the proposed amendment to rule 2.085(b) address the trial judge’s duties in relation to priority cases. Proposed new rule 2.085(c) addresses the attorneys’ role and the role of the chief judges with respect to the scheduling of priority cases.
The Rules Committee also recommends amendments to rule 2.052 which specifically address TPR and other time-sensitive cases involving children, and clarify that subdivision (a) simply provides general “guidelines” for resolving calendar conflicts.
After considering the comments and hearing oral argument, we adopt the Rules Committee’s proposals with the modifications discussed below.
PRIORITY CASES
New Rule 2.050(g), Duty to Expedite Priority Cases. New subdivision (g) of rule 2.050 creates an explicit duty on the part of the trial judge to expedite cases assigned priority status under Florida law. This amendment highlights the trial judge’s responsibility to appropriately manage priority cases. The last sentence of the new subdivision highlights juvenile dependency and TPR cases, and cases involving families and children in need of services, providing that “particular attention shall be given” to these types of cases. We have added a court commentary to *236 rule 2.050 explaining, consistent with the Rules Committee’s representation at oral argument, that this provision is intended to conform to the extent practicable with appellate rule 9.146(g), which requires these types of cases be given priority by appellate courts.
Amendment to Rule 2.085(b), Case Control. Existing rule 2.085(b) establishes the trial judge’s responsibility to take control of all cases on the docket and take steps to monitor and control the pace of litigation. New subdivisions (b)(2) and (b)(3) have been added to rule 2.085 and the existing subdivisions have been renumbered accordingly. Under new subdivision (b)(2), at the beginning of the litigation, the trial judge must identify whether a case has been assigned priority status under controlling Florida law. Under new subdivision (b)(3), after identifying priority cases, the judge must implement docket control policies so as to advance these cases to ensure their prompt resolution. The amendment to renumbered subdivision (b)(6), which currently gives priority only to “older cases and cases of greater urgency,” requires the advancement of priority cases on the docket.
New Rule 2.085(c), Priority Cases. New rule 2.085(c) establishes procedures for appropriate treatment of priority cases. New subdivision (c)(1) allows any party in a noncriminal case to file a notice of priority status, explaining the nature of the priority and the effect that priority status may have on the case. This notice will put the trial judge and all parties on notice of the claimed priority. The Rules Committee decided against proposing a mandatory notice requirement because there may be cases entitled to priority status that for some reason the “benefitted” party may not want to have expedited.
New subdivision (c)(2) allows any party, in a noncriminal case assigned priority status, who has a good faith opinion that the case has not been appropriately advanced on the docket to seek review by motion for review with the chief judge or chief judge’s designee. We are sensitive to the concerns raised by the Judicial Administration Section of the Conference of Circuit Judges (Section) concerning this amendment. However, after carefully considering the issue, we conclude that providing for review by the chief judge is the most appropriate procedure for resolving disputes which may arise concerning the scheduling of priority cases. Under the new rule, the resolution of complaints concerning the scheduling of priority cases is left to the discretion of the chief judge. Moreover, since the new rule does not mandate procedures for review by the chief judge, scheduling complaints raised in a motion for review filed under the new rule can be handled like any other complaint made to the chief judge as the administrative officer of the circuit court. The new rule simply provides a formal vehicle to bring complaints concerning the scheduling of priority cases to the chief judge’s attention.
Amendment to Rule 2.085(d), Continuances. We also adopt the proposed amendment to subdivision (d), formerly subdivision (c), of rule 2.085, which controls requests for and the granting of continuances. Under the amendment, any motion for continuance filed in a priority case must clearly identify the case’s priority status and explain what effect the granting of the motion will have on the progress of the case. According to the Rules Committee, this requirement is intended to apply not only to motions by parties who are “benefitted” by the priority status, but also to motions by parties who may not be benefitted by the prompt and expeditious resolution of the case.
*237 CALENDAR CONFLICTS
Rule 2.052, Calendar Conflicts, is amended to correct any misconceptions that may exist about the effect of that rule. The word “guidelines” is substituted for the word “priorities” throughout the existing rule to ensure that judges and attorneys understand that the rule simply provides guidelines for resolving calendar conflicts. The resolution of such conflicts is left to the sound discretion of the presiding judge after considering the guidelines and other relevant circumstances, as provided by subdivision (b). See 770 So.2d at 154.
The committee also proposes that a new “guideline,” not found in the 1995 resolution, be added to subdivision (a). We have moved the new guideline from subdivision (a)(5) to subdivision (a)(1). Under new subdivision (a)(1), courts are reminded that established case priorities should be considered when resolving calendar conflicts. We have modified the last sentence of the Rules Committee’s proposed new guideline and moved it to new subdivision (a)(2)'. We have renumbered the existing subdivisions accordingly. As adopted, new subdivision (a)(2) provides: “Juvenile dependency and termination of parental rights cases are generally to be given preference over other cases, except for speedy trial and capital cases.”
We also have changed the words “should prevail over” to “are generally to be given preference over” in renumbered subdivisions (a)(3), (a)(4), and (a)(5) and have changed renumbered subdivision (a)(6) to read: “The case in which the trial date has been first set generally should take precedence.” Finally, we have added a court commentary that emphasizes that, in accordance with existing subdivision (c), when a scheduling conflict arises that involves different courts, the presiding judges should confer and undertake to agree on a resolution using the guidelines provided in the rule.
Accordingly, we amend the Florida Rules of Judicial Administration as reflected in the appendix to this opinion. New language is indicated by underscoring; deletions are indicated by struck-through type. The court commentary is offerfed for explanation and guidance only and is not adopted as an official part of the rules. The amendments shall become effective October 1,2002, at 12:01 a.m.
It is so ordered.
ANSTEAD, C.J., and SHAW, HARDING, WELLS, PARIENTE, LEWIS, and QUINCE, JJ„ concur!
APPENDIX
RULE 2.050. TRIAL COURT ADMINISTRATION
(a) Purpose. The purpose of this rule is to , fix administrative responsibility in the chief judges of the circuit courts and the other judges that the chief, judges may designate. When these rules refer to the court, they shall be construed to apply to a judge of the court when the context requires or permits.
(b) Chief Judge.
(1) The chief judge shall be a circuit judge who possesses administrative ability.
(2) The chief judge shall exercise administrative supervision over all courts within the judicial circuit in the exercise of judicial powers and over the judges and officers of the courts. The chief judge shall be responsible to the chief justice of the supreme court. The chief judge may enter and sign administrative orders, except as otherwise provided by this rule.
(3) The chief judge shall be the chief judicial officer of the circuit,- shall maintain liaison in all judicial administrative matters *238 with the chief justice of the supreme court, and shall develop an administrative plan for the efficient and proper administration of all courts within that circuit. The plan shall include an administrative organization capable of effecting the prompt disposition of cases; assignment of judges, other court officers, and executive assistants; control of dockets; regulation and use of courtrooms; and mandatory periodic review of the status of the inmates of the county jail. The plan shall be compatible with the development of the capabilities of the judges in such a manner that each judge will be qualified to serve in any division, thereby creating a judicial pool from which judges may be assigned to various courts throughout the state. The administrative plan shall include a consideration of the statistical data developed by the case reporting system. Questions concerning the administration or management of the courts of the circuit shall be directed to the chief justice of the supreme court through the state courts administrator.
(4)The chief judge shall assign judges to the courts and divisions, and shall determine the length of each assignment. All judges shall inform the chief judge of any contemplated absences that will affect the progress of the court’s business. If a judge is temporarily absent, is disqualified in an action, or is unable to perform the duties of the office, the chief judge or the chief judge’s designee may assign a proceeding pending before the judge to any other judge or any additional assigned judge of the same court. The chief judge may assign any judge to temporary service for which the judge is qualified in any court in the same circuit. If it appears to the chief judge that the speedy, efficient, and proper administration of justice so requires, the chief judge shall request the chief justice of the supreme court to assign temporarily an additional judge or judges from outside the circuit to duty in the court requiring assistance, and shall advise the chief justice whether or not the approval of the chief judge of the circuit from which the assignment is to be made has been obtained. The assigned judges shall be subject to administrative supervision of the chief judge for all purposes of this rule. When assigning a judge to hear any type of postconviction or collateral relief proceeding brought by a defendant who has been sentenced to death, the chief judge shall assign to such cases the judge who presided over the original proceeding if that judge is active or otherwise available to serve unless otherwise directed by the supreme court. Nothing in this rule shall restrict the constitutional powers of the chief justice of the supreme court to make such assignments as the chief justice shall deem appropriate.
(5) The chief judge may designate a judge in any court or court division of circuit or county courts as “administrative judge” of any court or division to assist with the administrative supervision of the court or division. The designee shall be responsible to the chief judge, shall have the power and duty to carry out the responsibilities assigned by the chief judge, and shall serve at the pleasure of the chief judge.
(6) The chief judge may require the attendance of prosecutors, public defenders, clerks, bailiffs, and other officers of the courts, and may require from the clerks of the courts, sheriffs, or other officers of the courts periodic reports that the chief judge deems necessary.
(7) The chief judge shall regulate the use of courtrooms, regularly examine the dockets of the courts under the chief judge’s administrative supervision, and require a report on the status of the actions *239 on the dockets. The chief judge may take such action as may be necessary to cause the dockets to be made current. The chief judge shall monitor the status of all pending postconviction or collateral relief proceedings brought by defendants who have been sentenced to death and shall take the necessary actions to assure that such cases proceed without undue delay. On July 1 and October 1, 1996, and on the first day of every January, April, July, and October thereafter, the chief judge shall inform the chief justice of the supreme court of the status of all such pending cases.
(8) The chief judge or the chief judge’s designee shall regularly examine the status of every inmate of the county jail.
(9) The chief judge may authorize the clerks of courts to maintain branch county court facilities. When so authorized, clerks of court shall be permitted to retain in such branch court facilities all county court permanent records of pending cases, and may retain and destroy these records in the manner provided by law.
(10) The chief judge shall ensure that no judge presides over a capital case in which the state is seeking the death penalty or collateral proceedings brought by a death row inmate until that judge has served a minimum of 6 months in a felony criminal division and has successfully completed the “Handling Capital Cases” course offered through the Florida. College of Advanced Judicial Studies. Each judge must complete the “Handling Capital Cases” course as soon as practicable upon entering the criminal division. Once a judge successfully completes the “Handling Capital Cases” course, the judge must thereafter attend a “refresher” course during each of the subsequent continuing judicial education reporting periods. The chief justice may waive the course requirement in exceptional circumstances at the request of the chief judge. This requirement shall not preclude a judge from presiding in collateral proceedings in a case in which the judge presided over the trial or an earlier collateral proceeding.
(c) Selection. The chief judge shall be chosen by a majority of the circuit and county court judges within the circuit for a term of 2 years commencing on July 1 of each odd-numbered year, or if there is no majority, by the chief justice, for a term of 2 years. The election for chief judge shall be held no sooner than February 1 of the year during which the chief judge’s term commences beginning July 1. All elections for chief judge shall be by secret ballot. Any circuit or county court judge may nominate a candidate for chief judge and proxy voting shall be permitted. A chief judge may be removed as chief judge by the supreme court, acting as the administrative supervisory body of all courts, or may be removed by a two-thirds vote of the active judges. The purpose of this rule is to fix a 2-year cycle for the selection of the chief judge in each circuit. A chief judge may serve for successive terms. The selection of the chief judge should be based on managerial, administrative, and leadership abilities. A chief judge who is to be temporarily absent shall select an acting chief judge from among the circuit judges. If a chief judge dies, retires, fails to appoint an acting chief judge during an absence, or is unable to perform the duties of the office, the chief justice of the supreme court shall appoint a circuit judge to act as chief judge during the absence or disability, or until a successor chief judge is elected to serve the unexpired term. When the office of chief judge is temporarily vacant pending action within the scope of this paragraph, the duties of court administration shall be per *240 formed by the circuit judge' having the longest continuous service as a judge or by another circuit judge designated by that judge.
(d) Circuit Court Administrator. Each circuit court administrator shall be selected or terminated by the chief judge subject to concurrence by a majority vote of the circuit and county judges of the respective circuits.
(e) Local Rules and Administrative Orders.
(1) Local court rules as defined in rule 2.020 may be proposed by a majority of the circuit and county judges in the circuit. The judges shall notify the local bar within the circuit of the proposal, after which they shall permit a representative of the local bar, and may permit any other interested person, to be heard orally or in writing on the proposal before submitting it to the supreme court for approval. When a proposed local rule is submitted to the supreme court for approval, the following procedure shall apply:
(A) Local court rule proposals shall be submitted to the supreme court in January of each year. The supreme court may accept emergency proposals submitted at other times.
(B) Not later than February 15 of each year, the clerk of the supreme court shall submit all local court rule proposals to the Supreme Court Local Rules Advisory Committee created by rule 2.130. At the same time, the clerk of the supreme court shall send copies of the proposed rules to the appropriate committees of The Florida Bar. The Florida Bar committees, any interested local bar associations, and any other interested person shall submit any comments or responses that they wish to make to the Supreme Court Local Rules Advisory Committee on or before March 15 of the year.
(C) The Supreme Court Local Rules Advisory Committee shall meet on or before April 15 to consider the proposals and any comments submitted by interested parties. The committee shall transmit its recommendations to the supreme court concerning each proposal, with the reasons for its recommendations, within 15 days after its meeting.
(D) The supreme court shall consider the recommendations of the committee and may resubmit the proposals with modifications to the committee for editorial comment only. The supreme court may set a hearing on any proposals, or consider them on the recommendations and comments as submitted. If a hearing is set, notice shall be given to the chief judge of the circuit from which the proposals originated, the executive director of The Florida Bar, the chair of the Rules of Judicial Administration Committee of The Florida Bar, any local bar associations, and any interested persons who made comments on the specific proposals to be considered. The supreme court shall act on the proposals promptly after the recommendations are received or heard.
(E) If a local court rule is approved by the supreme court, it shall become effective on the date set by that court.
(F) A copy of all local court rules approved by the supreme court shall be indexed and recorded by the clerk of the circuit court in each county of the circuit where the rules are effective. A set of the recorded copies shall be readily available for inspection as a public record, and copies shall be provided to any requesting party for the cost of duplication. The chief judge of the circuit may provide for the publication of the rules. The clerk of the supreme court shall furnish copies of each *241 approved local court rule to the executive director of The Florida Bar.
(2) Any judge or member of The Florida Bar who believes that an administrative order promulgated under subdivision (b)(2) of this rule is a court rule or a local rule as defined in rule 2.020, rather than an administrative order, may apply to the Supreme Court Local Rules Advisory Committee for a decision on the question. The decisions of the committee concerning the determination of the question shall be reported to the supreme court, and the court shall follow the procedure set forth in subdivision (D) above in considering the recommendation of the committee.
(3) All administrative orders of a general and continuing nature, and all others designated by the chief judge, shall be indexed and recorded by the clerk of the circuit court in each county where the orders are effective. A set of the recorded copies shall be readily available for inspection as a public record, and copies shall be provided to any requesting party for the cost of duplication. The clerk of the circuit court shall furnish copies of each administrative order to the executive director of The Florida Bar. The chief judge shall, on an annual basis, direct a review of all local administrative orders to ensure that the set of copies maintained by the clerk remains current and does not conflict with supreme court or local rules.
(4) All local court rules entered pursuant to this section shall be numbered sequentially for each respective judicial circuit.
(f) Duty to Rule within a Reasonable Time. Every judge has a duty to rule upon and announce an order or judgment on every matter submitted to that judge within a reasonable time. Each judge shall maintain a log of cases under advisement and inform the chief judge of the circuit at the end of each calendar month of each case that has been held under advisement for more than 60 days.
(g) Duty to Expedite Priority Cases. Every judge has a duty to expedite priority cases to the extent reasonably possible. Priority cases are those cases that have been assigned a priority status or assigned an expedited disposition schedule by statute, rule of procedure, case law, or otherwise. Particular attention shall be given to all juvenile dependency and termination of parental rights cases, and to cases involving families and children in need of services.
(gh) Neglect of Duty. The failure of any judge, clerk, prosecutor, public defender, attorney, court reporter, or other officer of the court to comply with an order or directive of the chief judge shall be considered neglect of duty and shall be reported to the chief justice of the supreme court. The chief justice may report the neglect of duty by a judge to the Judicial Qualifications Commission, and neglect of duty by other officials to the governor of Florida or other appropriate person or body.
(M) Status Conference after Compilation of Record in Death Cases. In any proceeding in which a defendant has been sentenced to death, the circuit judge assigned to the case shall take such action as may be necessary to ensure that a complete record on appeal has been properly prepared. To that end, the judge shall convene a status conference with all counsel of record as soon as possible after the record has been prepared pursuant to rule of appellate procedure 9.200(d) but before the record has been transmitted. The purpose of the status conference shall be to ensure that the record is complete.
*242 Court Commentary
1996 Court Commentary. Rule 2.050(h) should be read in conjunction with Florida Rule of Appellate Procedure 9.140(b)(4)(A).
1997 Court Commentary [Rule 2.050(b)(10) ]. The refresher course may be a six-hour block during any Florida Court Education Council approved course offering sponsored by any approved Florida judicial education provider, including the Florida College of Advanced Judicial Studies or the Florida Conference of Circuit Judges. The block must contain instruction on the following topics: penalty phase, jury selection, and rule 3.850 proceedings.
Failure to complete the refresher course during the three-year judicial education reporting period will necessitate completion of the original “Handling Capital Cases” course.
2002 Court Commentary. Recognizing the inherent differences in trial and appellate court dockets, the last sentence of subdivision (g) is intended to conform to the extent practicable with appellate rule 9.146(g), which requires appellate courts to give priority to appeals in juvenile dependency and termination of parental rights cases, and in cases involving families and children in need of services.
RULE 2.052. CALENDAR CONFLICTS
(a)PrioritiesGuidelines. In resolving calendar conflicts between the state courts of Florida or between a state court and a federal court in Florida, the following ease pmoritiesguidelines must be considered:
(1) Any case priority status established by statute, rule of procedure, case law, or otherwise shall be evaluated to determine the effect that resolving a calendar conflict might have on the priority case or cases.
(2) Juvenile dependency and termination of parental rights cases are generally to be given preference over other cases, except for speedy trial and capital cases.
(3) Criminal cases should — prevailare generally to be given preference over civil cases.
(24) Jury trials should prevailare generally to be given preference over non-jury trials.
(35) Appellate arguments, hearings, and conferences should-prevailare generally to be given, preference over trial court proceedings.
(46) The case in which the trial date has been first set generally should take precedence.
(b) Additional Circumstances. Factors such as cost, numbers of witnesses and attorneys involved, travel, length of trial, age of case, and other relevant matters may warrant deviation from these case prioritiesguidelines.
(c) Notice and Agreement; Resolution by Judges. When an attorney is scheduled to appear in 2 courts at the same time and cannot arrange for other counsel to represent the clients’ interests, the attorney shall give prompt written notice of the conflict to opposing counsel, the clerk of each court, and the presiding judge of each case, if known. If the presiding judge of the case cannot be identified, written notice of the conflict shall be given to the chief judge of the court having jurisdiction over the case, or to the chief judge’s desig-nee. The judges or their designees shall confer and undertake to avoid the conflict by agreement among themselves. Absent agreement, conflicts should be promptly resolved by the judges or their designees in accordance with the above case prioriti-esguidelines.
*243 Committee Notes
1996 Adoption. The adoption of this rule was prompted by the Resolution of the Florida State-Federal Judicial Council Regarding Calendar Conflicts Between State and Federal Courts, which states as follows:
WHEREAS, the great volume of cases filed in the state and federal courts of Florida creates calendar conflicts between the state and federal courts of Florida which should be resolved in a fair, efficient and orderly manner to allow for judicial efficiency and economy; and
WHEREAS, the Florida State-Federal Judicial Council which represents the Bench and Bar of the State of Florida believes that it would be beneficial to formally agree upon and publish recommended procedures and priorities for resolving calendar conflicts between the state and federal courts of Florida;
NOW, THEREFORE, BE IT RESOLVED
In resolving calendar conflicts between the state and federal courts of Florida, the following case priorities should be considered:
1. Criminal cases should prevail over civil cases.
2. Jury trials should prevail over non-jury trials.
3. Appellate arguments, hearings, and conferences should prevail over trials.
4. The case in which the trial date has been first set should take precedence.
5. Circumstances such as cost, numbers of witnesses and attorneys involved, travel, length of trial, age of case and other relevant matters may warrant deviation from this policy. Such matters are encouraged to be resolved through communication between the courts involved.
Where an attorney is scheduled to appear in two courts — trial or appellate, state or federal — at the same time .and cannot arrange for other counsel in his or her firm or in the case to represent his or her client’s interest, the attorney shall give prompt written notice to opposing counsel, the clerk of each court, and the presiding judge of each case, if known, of the conflict. If the presiding judge of a case cannot be identified, written notice of the conflict shall be given to the chief judge of the court having jurisdiction over the case, or to his or her designee. The judges or their designees shall confer and undertake to avoid the conflict by agreement among themselves. Absent agreement, conflicts should be promptly resolved by the judges or their designees in accordance with the above case priorities.
In jurisdictions where calendar conflicts arise with frequency, it is recommended that each court involved consider appointing a calendar conflict coordinator to assist the judges in resolving calendar conflicts by obtaining information regarding the conflicts and performing such other ministerial duties as directed by the judges.
REVISED AND READOPTED at Miami, Florida, this 13th day of January, 1995.
Court Commentary
2002 Court Commentary. As provided in subdivision (c), when a scheduling conflict involves different courts, the presiding judges should confer and undertake to agree on a resolution, using the guidelines provided in this rule.
*244 RULE 2.085. TIME STANDARDS FOR TRIAL AND APPELLATE COURTS
(a) Purpose. Judges and lawyers have a professional obligation to conclude litigation as soon as it is reasonably and justly possible to do so. However, parties and counsel shall be afforded a reasonable time to prepare and present their case.
(b) Case Control. The trial judge shall take charge of all cases at an early stage in the litigation and shall control the progress of the case thereafter until the ease is determined. The trial judge shall take specific steps to monitor and control the pace of litigation, including the following:
(1) assuming early and continuous control of the court calendar;
(2) identifying priority cases as assigned by statute, rule of procedure, case law, or otherwise;
(3) implementing such docket control policies as may be necessary to advance priority cases to ensure prompt resolution;
(24) identifying cases subject to alternative dispute resolution processes;
(35) developing rational and effective trial setting policies; and
(46) giving advancing the trial setting of priority cases, older cases, and cases of greater urgency priority in trial settings.
(c) Priority Cases.
(1) In all noncriminal cases assigned a priority status by statute, rule of procedure, case law, or otherwise, any party may file a notice of priority status explaining the nature of the case, the source of the priority status, any deadlines imposed by law on any aspect of the case, and any unusual factors that may bear on meeting the imposed deadlines.
(2) If, in any noncriminal case assigned a priority status by statute, rule of procedure, case law, or otherwise, a party is of the good faith opinion that the case has not been appropriately advanced on the docket or has not received priority in scheduling consistent with its priority case status, that party may seek review of such action by motion for review to the chief judge or to the chief judge’s designee. The filing of such a motion for review will not toll the time for seeking such other relief as may be afforded by the Florida Rules of Appellate Procedure.
(ed) Continuances. All judges shall apply a firm continuance policy. Continuances should be few, good cause should be required, and all requests should be heard and resolved by a judge. All motions for continuance shall be in writing unless made at a trial and, except for good cause shown, shall be signed by the party requesting the continuance. All motions for continuance in priority cases shall clearly identify such priority status and explain what effect the motion will have on the progress of the case.
(de) Time Standards. The following time standards are hereby established as a presumptively reasonable time period for the completion of cases in the trial and appellate courts of this state. It is recognized that there are cases that, because of their complexity, present problems that cause reasonable delays. However, most cases should be completed within the following time periods:
(1) Trial Court Time Standards.
(A) Criminal.
Felony — 180 days (arrest to final disposition)
Misdemeanor — 90 days (arrest to final disposition)
(B) Civil.
Jury cases — 18 months (filing to final disposition)
*245 Non-jury cases — 12 months (filing to final disposition)
Small claims — 95 days (filing to final disposition)
(C) Domestic Relations.
Uncontested — 90 days (filing to final disposition)
Contested — 180 days (filing to final disposition)
Temporary support and enforcement of support hearings- — 14 days (from day of request)
(D) Probate.
Uncontested, no federal estate tax return — 12 months (from issuance of letters of administration to final discharge)
Uncontested, with federal estate tax return — 12 months (from the return’s due date to final discharge)
Contested — 24 months (from filing to final discharge)
(E) Juvenile.
Detention hearings — 24 hours (arrest to hearing)
Adjudicatory hearing (dependency) — - 180 days (filing of petition to final disposition)
Adjudicatory hearing (delinquency)— 90 days (filing of petition to final disposition)
Adjudicatory hearing (child detained) — 21 days (filing of petition to hearing)
(2) Supreme Court and District Courts of Appeal Time Standards: Rendering a decision — within 180 days of either oral argument or the submission of the case to the court panel for a decision without oral argument
(3) Florida Bar Referee Time Standards: Report of referee — within 180 days of being assigned to hear the case
(4) Circuit Court Acting as Appellate Court:
Ninety days from submission of the case to the judge for review
(ef) Reporting of Cases. The time standards require that the following monitoring procedures be implemented:
All pending cases in circuit and district courts of appeal exceeding the time standards shall be listed separately on a report submitted quarterly to the chief justice. The report shall include for each case listed the case number, type of case, case status (active or inactive for civil cases and contested or uncontested for domestic relations and probate cases), the date of arrest in criminal cases, and the original filing date in civil cases. The Office of the State Courts Administrator will provide the necessary forms for submission of this data. The report will be due on the 15th day of the month following the last day of the quarter.

. The original petition was filed by attorney Kreidler and the Executive Director of The Florida Bar. See Fla. R. Jud. Admin. 2.130(d) (providing that if a rules committee rejects a proposal, the proponent may submit the proposal to The Florida Bar Board of Governors).